UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

J.G. and J.G., on behalf of J.G.,

                                 Plaintiffs,

        --against--

Board of Education of the Briarcliff Manor
Union Free School District,                      **Docket No. 07cv7245 (KK)**

                                Defendant.

------------------------------------------------------------x

STATE OF NEW YORK     }
                             } ss.
COUNTY OF NEW YORK   }

GARY S. MAYERSON, being duly sworn, deposes and says:

1.      I am the principal of Mayerson and Associates, the law firm representing plaintiffs in this IDEA-based appeal brought pursuant to 20 U.S.C. § 1415. A copy of the Summons and Complaint *timely* filed on August 14, 2007 is annexed hereto as Exhibit A.

2.      I respectfully submit this affidavit in opposition to defendant's premature and unfounded motion to dismiss the Complaint based on insufficiency of service and defendant's related, but erroneous belief that plaintiffs have somehow run out of time to serve the Summons and Complaint. As I shall show, defendant's concerns about inadequate service of process on August 24, 2007 are now moot and academic, in that on September 19, 2007, plaintiffs re-served defendant using a different process server (Exhibit B). Moreover, even if plaintiffs had not re-served the Complaint (which they did), under Rule 4 of the FRCP, plaintiffs would still have until December 12, 2007, to serve the Summons and Complaint.

3. Defendant's counsel admits that on August 14, 2007, plaintiffs <u>timely</u> appealed from the SRO's April 16, 2007 administrative decision by filing the Summons and Complaint. In this regard, Section 4404 (3) (a) of the New York Education Law provides that "… such proceeding shall be *commenced* within four months after the determination to be reviewed becomes final and binding on the parties." The central error of defendant's motion is defendant's contention that the Summons and complaint then had to be served by August 17, 2007, only three days after it was filed.

4. Defendant is wrong, as a matter of law and statute. In a federal action of this type, the action is *commenced* by the timely filing of the Summons and Complaint. (FRCP 3) ("A civil action is commenced by filing a complaint with the court.") Once the Summons and Complaint are timely filed, as they were here, Rule 4 (m) allows 120 days from the date of filing to *serve* the Summons and Complaint. Here, defendant prematurely served its notion to dismiss months before plaintiffs' time for service had elapsed. Plaintiffs' time to serve under Rule 4 *still* has not run.

5. In the balance of defendants' dismissal motion, defendant contends that the initial process server's August 24, 2007 affidavit of service is a lie. In support of its contention, defendant submits a video electronic record (not including any sound) which, according to counsel, represents the service effort. We have used Aetna, our longstanding process server, for <u>years</u> without incident. Our written instructions to the process server (Exhibit C) were clear and unequivocal.

6. We have made inquiry with the process server's supervisor. The process server's supervisor has advised us that the process server was very experienced, and had been *advised* by a school district functionary to leave the papers just as he did in the video. However,

rather than slog through a time-consuming and expensive traverse hearing that would turn a molehill service of process issue into a mountain, I made the decision to render the service of process issue moot and academic by having a *different* process server serve the Summons and Complaint <u>again</u> upon defendant. I instructed Aetna to use a *different* process server so as to eliminate any issue as to the reliability of the affidavit of service.

7.	That is precisely what Aetna did. On September 19, 2007, well within the time for service under FRCP 4, the new process server's affidavit (Exhibit B) recites that service of the Summons and Complaint was made upon "Juanita Vrocket," who advised that she was authorized to accept service of process on behalf of defendant's Superintendent, who apparently did not come to the front desk. If, for any reason, defendant's counsel contests this new process server's affidavit, she should supply the Superintendent's home address, and we will take care of the rest. If the defendant insists on a "stake out," so be it.

8.	The balance of defendant's counsel's affidavit on this motion is both disappointing and offensive. A main theme of counsel's affidavit is that my office is somehow morally blameworthy for the alleged acts or omissions of Aetna's original process server. As noted above, the Aetna supervisor advised that the process server was *instructed* by a school district functionary to leave the papers as he did in defendant's video record. Even assuming arguendo only, that the Aetna process server actually did "lie" in his affidavit, as defendant's counsel avers, we had no good reason to challenge the original process server's affidavit until such time as defendant's counsel provided her electronic record and *contested* service. We also would have addressed this issue earlier had counsel

had the courtesy to pick up the telephone. Instead, ostensibly for delay or other unhelpful reasons, defendant's counsel saw fit to prepare a costly and time-consuming motion.[1]

9. We did everything right. We sent out the Summons and Complaint for filing with plenty of time remaining to do so. We then promptly put the Summons and Complaint out for service, and our instructions to the process server (Exhibit C) could not have been clearer.

10. Similarly offensive is counsel's statement at paragraph 25 "plaintiffs' attorney is no stranger to initiating appeals against school districts, including the defendant herein." Counsel makes us out to be a recidivist *pro se* litigator whose habit is to file frivolous, losing appeals. Such is not the case.

11. In actuality, as far as I am aware, plaintiffs' matter is our very first litigated matter with the Briarcliff Manor School District. Moreover, on an overall basis, we win or settle over 90% of our matters. Where there is an appeal, our track record in federal court and other appeal venues has been excellent. I am proud to have been counsel of record in the following important IDEA-based decisions:

   a. T.H. v. Board of Educ., 55 F. Supp. 2d 830 (D. Ill. 1999). An early reimbursement case involving autism and tuition reimbursement for the intervention approach known as Applied Behavior Analysis (ABA).

   b. Sackets Harbor Cent. Sch. Dist. v. Munoz, 283 A.D.2d 756 (N.Y. App. Div. 2001). In a case of first impression, the Appellate Division, Third Department, held that if a school district conducts a "vote" at an IEP meeting, and the parents' position prevails following that vote, the school district is bound by the vote and is estopped to deny its effect.

---

[1] Had defendant's counsel asked for reasonable additional time to answer, we would have consented, as we always do.

      c. Deal v. Hamilton County Bd. of Educ., 392 F.3d 840 (6th Cir. 2004), cert. denied, 546 U.S. 936 (2005).[2] (School district spent several *million* dollars fighting a parent's $75,000 reimbursement claim, only to lose because of findings that the school district had impermissibly "predetermined" child's educational program and failed to meaningfully include the child's parents at the child's IEP meetings.)

      d. L.B. v. Nebo Sch. Dist., 379 F.3d 966 (10th Cir. 2004). Reversing the District Court and the local level administrative hearing officer, the Tenth Circuit held that the child's school district had failed to educate the child in the child's "least restrictive environment" and was liable to reimburse the child's parents for ABA and other privately secured supports. Historically, this case apparently represented the very first time that any child had won in the state of Utah, which then had an unbroken thirty-year run of ruling only for school districts.

      e. Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61 (3d Cir. 2004). In a case of first impression, the Third Circuit held that under appropriate circumstances, parents may be personally compensated for performing a FAPE function that the school district was duty bound to perform.

      f. D.F. v. Ramapo Cent. Sch. Dist., 430 F.3d 595 (2d Cir. 2005). In a case of first impression, the Second Circuit considered the proper use of "retrospective evidence" when determining the substantive validity of an Individualized Education Plan on Prong I.

      g. A.R. v. N.Y. City Dep't of Educ., 407 F.3d 65 (2d Cir. 2005). Previously cited case in which the Second Circuit upheld earlier hourly rates billed by Mayerson & Associates on the basis of special expertise in educational rights matters and established that attorney work in conjunction with administrative-level due process proceedings should not be discounted or subjected to a "two tier" or otherwise lower standard of recovery.

      h. C.B. ex rel W.B. v. N.Y. City Dep't of Educ., 2005 U.S. Dist. LEXIS 15215 (D.N.Y. 2005) (recognizing a more relaxed standard on Prong II).

      i. A.C. v. Bd. of Educ. of Chappaqua Central Sch. Dist., 2007 U.S. Dist. LEXIS 31417 (defining when a child with "interfering behavior" is entitled to a "Functional Behavior Assessment")

      j. T.P. v. Mamaroneck Union Free Sch. Dist., 2007 U.S. Dist. LEXIS 35288 (Apparently first Federal case in New York finding impermissible "predetermination")

---

[2] Deal was cited by Justice Ginsburg in her dissent in Schaffer v. Weast, 546 U.S. 49, 65 (U.S. 2005), as an example of why the Court should not place the burden of persuasion on parents.

12.     In addition to our work for paying clients, I am proud that each year, we represent more than our fair share of *pro bono* clients. In this connection, I also am the Director of the Autism Speaks Federal Legal Appeal Project, a *pro bono* initiative at the federal level. Most recently, I worked closely with a team of pro bono attorneys from Akin Gump to submit an amicus brief to the United States Supreme Court in the *Tom F.* case, involving the New York City Department of Education's appeal from a Second Circuit ruling supporting the standing of parents to contest an inadequate Individualized Educational Plan. (Exhibit D). This Monday, I will be in Washington, D.C. to hear argument. Parenthetically, it is worth noting that on the very same day that we filed our amicus brief, the Justice Department filed its own amicus brief in the *Tom F.* case, *siding* with our position on behalf of parents.

13.     The foregoing, I submit, is the real reason defendant's counsel has moved to dismiss. Defendant's counsel is concerned -- for good reason -- that when this Court reviews the administrative record on the merits, it might well invoke the applicable legal standards and reverse, as we have requested. We are not moving for Rule 11 sanctions but the fact that defendant's counsel would make a motion as unfounded as this one should give this Court a window of insight as to the actual bona fides of defendant's other positions.

14.     As noted above, we do not believe that plaintiffs' time to serve the Summons has run. We urge that FRCP 4 provides a larger window for *service* of process once, as here, the Summons and Complaint have been timely filed, "commencing" the action. However, if for any reason this Court disagrees, we ask that the Court treat our opposition as a motion to extend time to serve the Summons and Complaint. There is ample and good cause here for such relief (if needed) and defendant will not be unduly prejudiced if it must answer on the merits. That is what a publicly funded school district is supposed to do.

WHEREFORE, it is respectfully requested that defendant's motion to dismiss be denied.

_____
Gary S. Mayerson (GSM 8413)

Sworn to before me
This 26th day of
September, 2007

_____
Notary Public

RANDI M. ROTHBERG
Notary Public, State of New York
No. 02RO6117613
Qualified in New York County
Commission Expires November 1, 2008